IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| **Thomas Charles Jones,** | № |
| Plaintiff, | |
| vs. | **COMPLAINT** (Jury Trial Demanded) |
| **Robert Curtis, Valentin Santos, Jason L. Brooks, Harold Robinson, Jamie Berggrun, Dodson Bryson, Darren Vaughn, Tyler Price, Kyle Price, and Greenville County Sheriff's Office Master Deputy Amendolare,** | |
| Defendants. | |

Plaintiff, complaining of the Defendants, would show this court the following:

1. The Plaintiff, Thomas Charles Jones (hereinafter "Charles"), is a citizen and resident of the County of Greenville, State of South Carolina.

2. The Defendants work at the Greenville County Sheriff's Office in Greenville County, South Carolina.

3. The Greenville County Sheriff's Office is a governmental agency of Greenville County, South Carolina.

4. The acts and omissions of the Defendants subject of this action occurred in Greenville County, South Carolina.

5. At all times material to this complaint, the Defendants were acting under color of law as officers of the Greenville County Sheriff's Office.

6. This action is brought pursuant to 42 U.S.C. § 1983 and pursuant to all other applicable law.

1

7. On or about November 25, 2017, Charles, Jessica Lane Hartley, and Brooklyn Dean were in Jessica's black Toyota Corolla. Charles was driving Jessica's car.

8. After stopping at the traffic light in the left turn lane at the intersection of North Washington Avenue and Highway 123 (a/k/a Easley Bridge Road), which is in Greenville County, South Carolina, the car stalled out and would not restart. Jessica, Charles, and Brooklyn exited the car and walked to the sidewalk on the left side of the road.

9. Greenville County Sheriff's Office employee and defendant Sergeant Robert Curtis arrived at the scene of the stalled car.

10. As this was occurring, Jessica, Charles, and Brooklyn walked back to the car.

11. Jessica got into the driver's seat to try and start the car again and Charles went to raise the hood of the car to show that the car was disabled.

12. Charles explained to Sgt. Curtis that the car would not start.

13. Charles then asked Sgt. Curtis to help them push the car out of the street to a parking lot located on the opposite side of the intersection.

14. Sgt. Curtis did not give any such assistance.

15. Sgt. Curtis asked Jessica to get out of the car and go to the back of it.

16. Sgt. Curtis went to the front of the car where Charles was standing.

17. About that time, Greenville County Sheriff's Office employee and defendant Deputy Valentin Santos arrived at the stalled car.

18. Jessica and Brooklyn are white women and Charles is a black man.

19. At no point did Jessica, Charles, or Brooklyn engage in any behavior that gave any of the Defendants any reason to believe that any of them had committed any crime.

20. At no point during the entire encounter with the Defendants that Jessica and Charles experienced did any of the Defendants have any reason to believe that Jessica or Charles had committed any crime.

21. Sgt. Curtis and Deputy Santos approached Charles at the front of the car. Sgt. Curtis angrily demanded of Charles, "Give me your ID". Charles replied, "What's going on?" Sgt. Curtis replied, "Don't worry about it. Give me your ID". Charles again asked, "What's going on?" Charles was holding his cell phone in his hand.

22. Charles said, "I live just down the street. I am going to call them to come down here to see what is going on."

23. Charles again said, "I am calling my family." Sgt. Curtis said, "You better get off that phone before I smack it out of your [expletive – unclear what word was used] hand."

24. Charles stated to Sgt. Curtis, "You are out of line".

25. Sgt. Curtis and Deputy Santos grabbed Charles' arms.

26. Sgt. Curtis proceeded to punch Charles in the mouth, without provocation. This punch caused Charles to start bleeding. Charles was still holding his phone in his right hand.

27. Charles was dazed and hurt by the punch. Sgt. Curtis and Deputy Santos threw Charles to the ground, thereby breaking his phone and injuring and cutting the back of Charles' right hand, injuring Charles' right wrist, Charles' neck, and Charles' back. This occurred while Charles was still spitting blood out of his mouth.

28. Either Sgt. Curtis or Deputy Santos, who were cooperating in their attack on Charles, kneed Charles in the back as he was on the ground while they were placing him in handcuffs.

29. Jessica kept asking Sgt. Curtis and Deputy Santos what they were doing. Jessica bent down to speak with Charles in an effort to console him.

30. Charles was lying on his stomach with his face being pressed by Sgt. Curtis or Deputy Santos into the surface of the roadway.

31. While this was happening, other officers employed by the Greenville County Sheriff's Office arrived on the scene.

32. The officers who arrived on the scene assisted Sgt. Curtis and Deputy Santos in their actions and assisted in the arrest of Jessica and Charles.

33. The officers who arrived on the scene were Defendants Master Deputy Amendolare, Deputy Harold Robinson, Deputy Jamie Berggrun, Deputy Jason L. Brooks, Deputy Dodson Bryson, Deputy Darren Vaughn, Deputy Tyler Price, and Deputy Kyle Price, all employed by Defendant Greenville County Sheriff's Office.

34. Charles called out to Sgt. Curtis and Deputy Santos that they were doing him wrong.

35. Sgt. Curtis was laughing and said, "Hey, you can file a complaint or call my supervisor. Oh, that's me." Other deputies at the scene started laughing.

36. Jessica, who had been kneeling beside Charles trying to console him, began to stand up, and one of the deputies on the scene approached Jessica from behind and pushed Jessica to the ground. Jessica, who had not noticed that deputy, reached out and grabbed on to that deputy's arm.

4

37. That deputy threw Jessica onto the ground on her stomach, pulled her arms behind her, and placed her in handcuffs.

38. At this time, Jessica's dress was pulled up to her shoulders, exposing that all she was wearing underneath was thong underwear.

39. Jessica, who was now lying on the ground next to Charles, kept asking for someone to please pull her dress down.

40. The deputy who handcuffed her then said, "If you are going to be out here acting unladylike, you sit on the side of the road unladylike."

41. Brooklyn, who was still in the backseat of Jessica's car, got out of the car and told one of the deputies, "I have taken some criminal justice courses and you are doing them wrong."

42. The deputy told her that she had to leave the scene and stand over on side of the road.

43. Jessica was lying on the ground in the cold, exposed from the shoulders down, for about five minutes.

44. One of the newly arriving deputies finally stood Jessica up.

45. As this deputy was helping Jessica to stand, he asked her, "Why are you so worried about him? You are too pretty. He is trash." Jessica replied, "That's my boyfriend. I am standing behind him 100 percent, because you did him wrong." The replied to Jessica, "That's why you are going to jail too, you stupid bitch."

46. At this point, Deputy Jason L. Brooks moved Jessica away from Charles (who was still face down on the ground in handcuffs), toward the sidewalk.

47. Charles and Jessica spent the night in jail (separately).

48. Charles was charged with assault and battery, resisting arrest, and public disorderly conduct.

49. Following a bond hearing and processing, Charles was released pending resolution of his criminal charges.

50. No warrant was issued for Charles' arrest before the arrest happened.

51. After the Defendants left the charges pending for some time and prosecuted the criminal charges brought against Jessica and Charles, those criminal charges were eventually dismissed.

52. None of the Defendants had probable cause to believe that Charles was engaging in disorderly conduct, assaulted or battered anyone, resisted arrest, was interfering with police, or had committed any other crime.

53. The Defendants violated Charles' rights under the Fourth and Fourteenth Amendments to the Constitution of the United States, which give persons the right to be free from unreasonable seizures.

54. The Defendants also violated Charles' rights under the corresponding provisions of the South Carolina Constitution.

55. Charles has suffered damages, including, but not limited to, detention, physical injury, and damages relating to her prosecution.

56. Additionally, Charles has suffered humiliation, harassment, public ridicule, pain, and physical and emotional distress as a consequence of this arrest, detention, and prosecution.

57. The conduct of the Defendants toward Charles was grossly negligent and violated Charles's civil rights under state and federal law.

## FOR A FIRST CAUSE OF ACTION
### (Civil Rights Violation – 42 U.S.C. § 1983)

58. Each assertion set forth in this pleading that is consistent with the following is incorporated herein by reference as if here set forth verbatim

59. The Defendants falsely and wrongfully arrested Charles.

60. The Defendants used excessive force on Charles.

61. This conduct was in violation of Charles's Fourth Amendment rights as incorporated by the Fourteenth Amendment of the United States Constitution.

62. The Defendants are named in this lawsuit and sued in their individual capacity for purposes of damages pursuant to 42 U.S.C. § 1983 and the underlying decisional law issued by the United States Supreme Court and its inferior courts.

63. The Defendants were deliberately indifferent towards Charles's Constitutional rights by engaging in the conduct aforesaid.

64. The Defendants had a sworn duty to preserve, protect, and defend the Constitution of South Carolina and of the United States of America and were required by the laws of South Carolina and the United States of America to refrain from deliberately violating's Constitutional rights.

65. As a proximate result of the Defendant's violation of his Constitutional rights, Charles sustained damages.

66. Charles is entitled to judgment against the Defendants damages and punitive damages in an amount to be determined by a jury when informed of the facts in this matter and properly charged with the law by this court.

67. Charles is also entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## FOR A SECOND CAUSE OF ACTION
### (False Imprisonment)

68. Each assertion set forth in this pleading that is consistent with the following is incorporated herein by reference as if here set forth verbatim.

69. The Defendants falsely arrested and falsely imprisoned Charles.

70. The Defendants, without cause or legal justification, restrained and confined Charles within fixed boundaries.

71. The restraint was intentional and unlawful and was against Charles' will.

72. As a result, Charles was confined in the sheriff's custody and in a jail.

73. As a direct and proximate result, Charles suffered from embarrassment, humiliation, emotional distress, and exacerbation of the pain from his physical injury and in that he was arrested and placed in confinement for no legal cause.

74. Charles is entitled to judgment for actual damages, punitive damages, and the costs of this action.

## FOR A THIRD CAUSE OF ACTION
### (Malicious Prosecution)

75. Each assertion set forth in this pleading that is consistent with the following is incorporated herein by reference as if here set forth verbatim.

76. The Defendants caused judicial proceedings to be instituted and prosecuted against Charles as described above.

77. The charges that were brought against Charles were finally terminated in favor of Charles.

78. The Defendants acted with malice toward Charles in causing the institution of the proceedings against Charles.

79. The Defendants lacked probable cause to institute and continue those proceedings.

80. Charles has been damaged as a result of the Defendants' actions.

81. Charles is entitled to judgment for actual damages, punitive damages, and the costs of this action.

WHEREFORE, the Plaintiff prays:

a. For judgment against the Defendants for actual damages;

b. For judgment against the Defendants for punitive damages;

c. For judgment against the Defendants awarding the Plaintiff attorney's fees;

d. For judgment against the Defendants awarding the Plaintiff the costs of this action; and

e. For such other and further relief as the court may deem just and proper.

Respectfully submitted,

/s/ Andrew S. Radeker
Andrew S. Radeker
Fed ID No. 10059
HARRISON, RADEKER & SMITH, P.A.
Post Office Box 50143
Columbia, South Carolina 29250
(803) 779-2211
drew@harrisonfirm.com
ATTORNEY FOR PLAINTIFF

Columbia, South Carolina
November 25, 2019